# COURT OF APPEALS OF VIRGINIA

## Record No. 1599-24-2

QUENTIN S. YOUNGER

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued August 11, 2026[*]

## FROM THE CIRCUIT COURT OF HALIFAX COUNTY
### Robert H. Morrison, Judge

Jason S. Eisner (Law Office of Jason S. Eisner, on brief), for appellant.

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE RANDOLPH A. BEALES</u>

Following a bench trial, the circuit court convicted Quentin S. Younger of aggravated malicious wounding, trespassing, and assault and battery. On appeal, Younger contends that the evidence is insufficient to support his aggravated malicious wounding and trespassing convictions. He also argues that the trial court abused its discretion by sentencing him to 12 months in jail for his assault and battery conviction.

## BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Meade v.*

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

*Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "Accordingly, we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

On June 4, 2023, Seandra Crews was shopping at a Dollar General store in South Boston when she heard someone approaching her. She turned and saw Younger. Crews and Younger had recently ended their romantic relationship. While standing in an aisle, Younger talked to Crews "about getting back together." Younger grabbed Crews's arm and pushed her against the shelves while holding his hand beneath her chin. Mellvinnal Richardson, the Dollar General's assistant manager, saw "Younger with his arm around Ms. Crews' neck" and told Younger to "get your hands off of her." Younger refused and told Richardson to "mind my F'n business, you know, go on about my way." Richardson then "told him [Younger] he had to leave." Younger eventually complied and as he left, he said to Crews, "I'm going to get you, bitch."

Caleb Fox, another store employee, heard yelling and Richardson's command that Younger leave the store. He saw Richardson and Younger walk to the front of the store. However, after Richardson started walking "towards the registers" so that she could return to work, Fox saw Younger turn and jog back to Crews. He then saw Younger grab Crews, push her against a shelf, and "put his hands near her throat." After witnessing this altercation, Fox charged at Younger and "hit him on the side of the head with a box of cat food." Fox described the box of cat food as "the Nine Life box of cat food" which contained "about nine, maybe twelve" cans of cat food, each of which was "[l]ike a can of tuna fish." The box of cat food was small enough for Fox to hold with one hand. In response, Younger turned and pushed Fox, who fell to the floor. The two began fighting as Crews fled the store.

- 2 -

While Younger and Fox were fighting, Younger pinned Fox's arms and said that "he had something for me [Fox] since I wanted to be nosey." Younger then produced a knife. Younger released Fox, lunged at him, and stabbed him in the stomach with the weapon. The two continued to struggle, and Younger cut Fox's leg. Younger directed the knife at Fox's throat, but he cut Fox's face when Fox pushed the blade away. Younger also stabbed Fox in the chest. Younger took Fox's phone and left the store. Meanwhile, Crews drove off and called 911. However, after Crews "started to drive back around because I was concerned about what had" happened, she saw Younger leave the store with "blood on his shirt." After seeing Younger leave, Crews re-entered and found Fox on the floor. Fox was bleeding and calling out for help.

During the investigation of the incident, South Boston Police Officer Jeremy Eanes went to Younger's house. As he approached the house, he saw Younger on the floor inside of the house "face down with his hands behind his back" and "screaming something, but I'm not sure what." Officer Eanes further described Younger as being upset and "covered in blood on his shirt, pants, hands, face. There was a lot of blood on his person." Officer Eanes did not see any injuries on Younger, and Younger confirmed that he was not injured and that the blood on him was from "wrestling with an individual" at the Dollar General store. He stated that he did not have the knife with him and thought that he had lost it.

At trial, Richardson described the scene, stating that she heard Younger fighting with Crews and saw Fox run towards them. She retreated to the office, called 911, and waited for Younger to leave the store. After locking the door behind Younger when he left, she found Fox on the floor, bleeding, unable to move, and calling for help. Richardson explained that as assistant manager, she had the authority to order people to leave the premises and that she was in charge of the store while the manager was not present.

Fox described his wounds, explaining that he was flown by helicopter to a hospital and spent "[a]lmost a week" there. He underwent surgery, needed a breathing tube and stitches, and required physical therapy. At the time of trial, Fox had a scar on his face. Fox was temporarily unable to walk from the wound to his leg. His leg was also scarred—with numbness and weakness in his leg. The ongoing symptoms occasionally impacted his walking and sometimes caused him "sharp shooting pain into my toes." The stab wound to his stomach left a scar and caused a hernia which will require further surgery to repair. The stab wound to Fox's chest punctured a lung, impacted his breathing, and left him with weakness, pain, and a scar.

After the Commonwealth rested, Younger's counsel made a motion to strike the charges against his client. On the trespass charge, Younger's counsel argued that there was some discrepancy in Richardson's testimony, that "there wasn't really a whole lot of time for interaction during the initial confrontation by Ms. Richardson," and that there was "a little bit of confusion as far as what instructions were given to Mr. Younger." On the aggravated malicious wounding charge, Younger's counsel argued that Fox did not suffer a permanent and significant physical impairment, that Fox started the fight with Younger, and that Fox had some intention of stabbing Younger near the end of the fight.[2] In sum, Younger's counsel asked "the Court to find that we don't have the physical impairment requirement for an aggravated malicious wounding conviction. We don't have the intent to maim, disable, disfigure, or kill or malice at this point. So I ask the Court to strike that charge as well." The circuit court denied Younger's motion. The circuit court explained that "Richardson is a person with proper authority and she told him to get out of the

_____

[2] Fox testified that Younger stopped the fight after Fox "tr[ied] to stab him" with a box cutter while Fox was on his hands and knees. However, Younger did not testify that he ever saw Fox with a box cutter or that Fox ever tried to stab him. When asked by his own counsel, "Do you remember ever seeing if he [Fox] had one [a knife]?," Younger replied, "No."

- 4 -

store," that Fox's injuries were significant and permanent, and that Younger's "use of a knife establishes the malice" needed to overcome the motion to strike.

Testifying on his own behalf, Younger admitted that he confronted and put his hands on Crews in the Dollar General store and that Richardson ordered him to leave. He acknowledged that he began to leave the store but then turned back to address Crews again. He admitted grabbing Crews in the aisle and that Fox did not hit him until after he grabbed Crews again. He recalled fighting with Fox but claimed he did not remember cutting or stabbing him—though he did remember that he had a knife with him.

After Younger finished testifying, his counsel renewed his motion to strike the charges against Younger. Younger's counsel first reiterated many of the points raised in his initial motion. He then raised some new arguments. Specifically, he claimed that Younger could have been acting in self-defense or in the heat of passion. He also stated that Younger "was acting in terms of heat of passion based on reasonable provocation in the course of mutual combat" and asserted that the evidence failed to establish that Younger acted maliciously or with the requisite intent. Rejecting Younger's arguments, the trial court denied the motion to strike and convicted Younger of the charged offenses. Younger now appeals to this Court.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (emphasis in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant

- 5 -

question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015) (emphasis in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). However, "[i]ssues of statutory construction are questions of law which we review de novo." *McKee Foods Corp. v. County of Augusta*, 297 Va. 482, 495 (2019).

## I. Aggravated Malicious Wounding

Younger argues, "The trial court erred in finding Mr. Younger guilty of aggravated malicious wounding because Mr. Younger was acting in self-defense, lacked any intent to maim, disable, disfigure or kill, acted in the absence of malice, and did not leave the complainant permanently and significantly impaired."

Under Code § 18.2-51.2:

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

"To be convicted of malicious wounding, the Commonwealth must prove that the defendant maliciously stabbed, cut, or wounded 'any person or by any means cause[d] him bodily injury, with the intent to maim, disfigure, disable, or kill.'" *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (alteration in original) (quoting Code § 18.2-51). "The element in malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied . . . ." *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993). "Malice inheres in

- 6 -

the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. [Malicious intent to wound] may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." *Burkeen*, 286 Va. at 259 (alteration in original) (footnote omitted) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)).

"Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *Lucas v. Commonwealth*, 75 Va. App. 334, 346 (2022) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). "This Court does not view circumstantial evidence in isolation." *Id.* at 346-47. "Rather, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Id.* at 347 (quoting *Karnes v. Commonwealth*, 125 Va. 758, 764 (1919)).

"Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances, including the 'words or conduct' of the alleged offender." *Fary v. Commonwealth*, 77 Va. App. 331, 342 (2023) (en banc) (quoting *Secret*, 296 Va. at 228-29), *aff'd*, 303 Va. 1 (2024). Indeed, "[i]ntent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (alteration in original) (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

"The conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness'] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" *Johnson v. Commonwealth*,

58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)).  "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'"  *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).  "Where credibility issues are resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong."  *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010).  Moreover, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."  *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018).

Here, the evidence proved that after being ordered to leave the store, Younger attacked Crews inside the Dollar General.  In response, Fox ran to her aid and struck Younger in the head with a box of cat food to separate him from Crews, whom Younger was holding by her throat.  Younger then turned on Fox, attacking him and forcing him to the floor.  Younger threatened Fox, produced the knife, and repeatedly stabbed and cut Fox.  The trial court specifically disbelieved Younger's explanation for his behavior and found that Younger acted maliciously and with the intent to injure or kill Fox.  The record supports the trial court's credibility determination and demonstrated that Younger acted maliciously and with the requisite intent.

Under Code § 18.2-51.2, a "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement."  *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)).  "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [fact finder] to determine if the injuries are permanent."  *Id.* at 644-45.  This Court has found that scarring may constitute a

significant and permanent physical impairment. *See Newton*, 21 Va. App. at 90. Here, Fox detailed the extent of his numerous injuries, including several permanent scars, lasting pain, and other lingering effects from Younger's vicious attack. The evidence clearly demonstrated that Fox suffered permanent and significant injuries.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71). The fact finder must determine whether the appellant acted in reasonable apprehension of bodily harm. *See, e.g.*, *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989) (explaining that a person "is privileged to exercise reasonable force" when he or she "reasonably apprehends bodily harm by another" and "exercise[s] reasonable force to repel the assault"). This defense also requires a finding that the force that the appellant used was reasonable in relation to the threatened harm. *See Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008).

The evidence proved that Younger instigated the confrontation by attacking Crews without provocation. Fox ran to Crews's aid, and Younger responded by producing a weapon and repeatedly stabbing and cutting Fox. The record does not support Younger's claim that he acted in self-defense, and we find no error with the trial court's rejection of Younger's argument.

In short, the trial court did not err when it found Younger guilty of aggravated malicious wounding. As noted *supra*, the record supports the trial court's determination that Younger acted maliciously and with the requisite intent when he repeatedly stabbed Fox. The record also clearly supports the trial court's conclusion that Fox suffered significant and permanent injuries

within the meaning of Code § 18.2-51.2 and does not support Younger's claim that he acted in self-defense.

## II. Trespassing

Younger also argues, "The trial court erred in finding Mr. Younger guilty of trespassing because the evidence was unclear as to whether any person with authority to do so actually gave him instructions to leave that he was bound by law to follow."[3]

Under Code § 18.2-119:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian, or the agent of any such person, or other person lawfully in charge thereof, . . . he shall be guilty of a Class 1 misdemeanor.

Code § 18.2-119 "has an intent requirement because the Commonwealth [is] required to prove that [Younger] committed an act of intentional trespass." *Commonwealth v. Hicks*, 267 Va. 573, 583 (2004) (citing *Reed v. Commonwealth*, 6 Va. App. 65, 70-71 (1988)). In addition, this Court has recognized that private businesses have "the right to control who enters [their] property." *Solem v. Commonwealth*, No. 0884-22-2, slip op. at 6, 2023 Va. App. LEXIS 799, at *9 (Nov. 28, 2023).[4] Private businesses have this right because "[t]he right to exclude others is

---

[3] On brief, the Commonwealth claims that Younger waived this assignment of error because the theories that he now advances on appeal were not raised during his motions to strike. We assume without deciding that Younger properly preserved his assignment of error challenging his trespassing conviction. *See Abdo v. Commonwealth*, 64 Va. App. 468, 473 n.1 (2015).

[4] In *Solem*, an assistant manager of a Whole Foods store handed Solem a letter notifying her that she was not allowed on the Whole Foods premises. *Solem*, slip op. at 2, 2023 Va. App. LEXIS 799, at *2. After Solem kept entering the store, "employees advised Solem that she was banned." *Id.*, slip op. at 3, 2023 Va. App. LEXIS 799, at *3. Solem was eventually charged and convicted of trespassing. *Id.*, slip op. at 3-4, 2023 Va. App. LEXIS 799, at *3, *6. This Court upheld those convictions. *Id.*, slip op. at 8, 2023 Va. App. LEXIS 799, at *11. "Unpublished opinions, although not binding, may be cited as 'informative' and 'considered for their

generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Palmer v. Atl. Coast Pipeline, LLC*, 293 Va. 573, 581 (2017) (alteration in original) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984)). "A person who has been ordered to leave must do so within a reasonable amount of time under the circumstances." *Carter v. Commonwealth*, 300 Va. 371, 375 (2021). "The common law in this state has long recognized the right of a landowner to order a trespasser to leave . . . ." *Pike v. Commonwealth*, 24 Va. App. 373, 375 (1997).

On the day of the stabbing, Richardson and Fox were the only employees at the store. Richardson was an assistant manager, and Fox was "employed as the key holder at the time." Both worked at and had access to the store, and Richardson testified that she had the authority to order people to leave the premises. In addition, Younger himself initially complied with Richardson's order before rushing back into the store to confront Crews. Therefore, the record supports the trial court's conclusion that Younger had been ordered to leave by an authorized representative of the store—and that he refused to leave the premises timely. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of trespassing.

### III. Sentencing

Finally, Younger argues, "The trial court erred in sentencing Mr. Younger to the maximum sentence of 12 months in jail for assault and battery because the sentence did not take Mr. Younger's acceptance of responsibility into account and the contact was not aggravated and did not cause actual injury."

---

persuasive value.'" *Osman v. Commonwealth*, 76 Va. App. 613, 653 n.23 (2023) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see* Rule 5A:1(f).

This Court reviews the trial court's sentence only for an abuse of discretion. *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

Younger's 12-month sentence for assault and battery was within the statutory limits prescribed by the General Assembly. *See* Code §§ 18.2-11 and 18.2-57. "A Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771).

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The trial court was entitled to consider Younger's mitigating evidence and circumstances, but the trial court was not required to give them controlling effect. *Sheets v. Commonwealth*, 80 Va. App. 706, 718-19 (2024).

"[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Because Younger's "sentence was within the statutory range," we affirm the sentence imposed by the circuit court. *Id.*

CONCLUSION

In short, for all of the foregoing reasons, we uphold the judgment of the trial court.

*Affirmed.*